# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA,
### INDIANAPOLIS DIVISION

DENNIS VALLOSIA,

        Plaintiff,

   *vs.*

CAROLYN W. COLVIN, **Commissioner of
Social Security,**

        Defendant.

CAUSE NO.  1:14-cv-1455-SEB-DKL

## REPORT AND RECOMMENDATION

Plaintiff, Dennis R. Vallosia, applied for a period of disability, disability insurance benefits, and supplemental security income under the Social Security Act based on disability.  The defendant Commissioner denied his applications and Mr. Vallosia filed this suit for judicial review of that decision.  The district judge referred this Cause to this magistrate judge for preparation of a report and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b).  *Order Referring Issues to Magistrate Judge* [doc. 13].

### Standards

Judicial review of the Commissioner's factual findings is deferential:  courts must affirm if her findings are supported by substantial evidence in the record.  42 U.S.C. ' 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).  Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence.  *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001).  If

1

the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review derives from the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ [administrative law judge], we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of her legal conclusions is *de novo*. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. ' 416.905(a). A person will be determined to be disabled only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). 20 C.F.R. §§ 404.1505, 404.1566, 416.905, and 416.966. The combined effect of all of an applicant's impairments shall be considered throughout the disability determination process. 42 U.S.C. ' § 423(d)(2)(B) and 1382c(a)(3)(G). 20 C.F.R. §§ 404.1523 and 416.923.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. If disability status can be determined at any step in the sequence, an application will not be reviewed further. At the first step, if the applicant is currently engaged in substantial gainful activity, then he is not disabled. At the second step, if the applicant's impairments are not severe, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, if the applicant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, Part A, then the applicant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the Social Security Administration has pre-determined are disabling. 20 C.F.R. ' 404.1525. If the applicant's

impairments do not satisfy the criteria of a listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps.  RFC is an applicant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations and is categorized as sedentary, light, medium, or heavy, together with any additional non-exertional restrictions.  At the fourth step, if the applicant has the RFC to perform his past relevant work, then he is not disabled.  Fifth, considering the applicant's age, work experience, and education (which are not considered at step four), and his RFC, the Commissioner determines if he can perform any other work that exists in significant numbers in the national economy.  42 U.S.C. ' 416.920(a)

The burden rests on the applicant to prove satisfaction of steps one through four. The burden then shifts to the Commissioner at step five to establish that there are jobs that the applicant can perform in the national economy.  *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).  If an applicant has only exertional limitations that allow her to perform the full range of work at her assigned RFC level, then the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"),  may be used at step five to arrive at a disability determination.  The grids are tables that correlate an applicant's age, work experience, education, and RFC with predetermined findings of disabled or not-disabled.  If an applicant has non-exertional limitations or exertional limitations that limit the full range of employment opportunities at his assigned work

level, then the grids may not be used to determine disability at that level. Instead, a vocational expert must testify regarding the numbers of jobs existing in the economy for a person with the applicant's particular vocational and medical characteristics. *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993). The grids result, however, may be used as an advisory guideline in such cases.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a state-agency disability examiner and a physician or other medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[1] An applicant who is dissatisfied with the decision of the ALJ may request the SSA's Appeals Council to review the decision. If the Appeals Council either affirms or declines to review the decision, then the applicant may file an action in district court for judicial review. 42 U.S.C. ' 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

---

[1] By agreement with the Social Security Administration, initial and reconsideration reviews in Indiana are performed by an agency of state government, the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration. 20 C.F.R. Part 404, Subpart Q (' 404.1601, *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal Social Security Administration.

**Background**

At step one of the sequential evaluation process, the ALJ found that Mr. Vallosia has not engaged in substantial gainful activity since his alleged onset date of July 31, 2011. At step two, he found that Mr. Vallosia has the severe impairments of degenerative disc disease, diabetes, obesity, a learning disorder, and depression. At step three, the ALJ found that Mr. Vallosia's impairments, severe and non-severe, singly and in combination, do not meet or medically equal the criteria of any of the Listing of Impairments.

For steps four and five, the ALJ determined Mr. Vallosia's RFC. He found that Mr. Vallosia could perform a range of light work, defined by various exertional, postural, environmental, and non-exertional criteria, including the following: "simple routine tasks with the ability to attend, concentrate and persist for two hours at a time . . . ." (R. 27.) The hypothetical that the ALJ posed to the vocational expert contained a similar limitation: "simple one and two step tasks with the ability to attend, concentrate and persist for two hours at a time . . . ." (R. 56.)

At step four, the ALJ found that this RFC prevented performance of any of Mr. Vallosia's past relevant work. At step five, he found that, considering Mr. Vallosia's age, education, and transferability of skills, and based on the expert opinion of the vocational expert, a significant number of jobs exists that Mr. Vallosia can perform and that his is, therefore, not disabled.

When the Commissioner's Appeals Council denied Mr. Vallosia's request to review the ALJ's decision, his decision became the final decision of the Commissioner on Mr. Vallosia's claims and the one this Court reviews.

## Discussion

Because Mr. Vallosia identifies only error by the ALJ, the Court's discussion need not be extensive.  Mr. Vallosia contends that the ALJ's RFC definition is too vague and, therefore, fails to provide a supportable basis for the vocational expert's testimony about the number of jobs existing that Mr. Vallosia can perform.  As noted above, in his decision, the ALJ restricted Mr. Vallosia to "simple routine tasks with the ability to attend, concentrate and persist *for two hours at a time*", (R. 27 (emphasis added)), and the hypothetical that he posed to the vocational expert defined Mr. Vallosia's RFC as limited to, in part, "simple one and two step tasks with the ability to attend, concentrate and persist *for two hours at a time*", (R. 56 (emphasis added)).

Mr. Vallosia argues that, the ALJ's failure to define the interval between the two-hour periods when Mr. Vallosia is able to attend to, concentrate on, and persist with work tasks, renders the RFC definition fatally indefinite.  For example, if Mr. Vallosia requires thirty-minute or one-hour or two-hour breaks every two hours, rather than only five- or ten-minute breaks, then the Court is confident that there is a good likelihood that it would have a significant effect on the numbers of jobs available to Mr. Vallosia.  In addition, it is likely that the nature of the break that is required — *e.g.*, lying down *vs.* changing

position *vs.* changing tasks — will have an effect on the numbers of jobs available.  The Court also notes that the significance of even a small change in the number of available jobs is likely magnified in this case because the vocational expert testified that only 350 jobs exist in the state of Indiana for Mr. Vallosia.  (R. 32, 56.)

In response, the Commissioner does not attempt to defend the validity of the ALJ's two-hour concentration, persistence, and pace limit without a definition of the nature of the interim.  Instead, she points to another part of the ALJ's decision where he writes:

> Despite his mental deficits, however, I find that the claimant retains the mental capacity to understand, remember and follow simple instructions, but is restricted from work involving math.  Within these parameters, and in the context of the performing simple routine tasks, he is able to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence.  While I note a "moderate" limitation in the "paragraph B" criteria above for concentration, persistence or pace, this is based upon the record as a whole and all situations the claimant might encounter.  However, when limited to simple routine tasks, not involving math, his ability to function is higher.  Within these parameters, *the claimant is able to sustain the attention, concentration and persistence needed to perform in an ordinary work setting on a regular and continuing basis.*

(R. 31 (emphasis added).)  The Commissioner argues that, in this passage, the ALJ defines the length and nature of the intervals between the two-hour periods during which Mr. Vallosia is able to attend to, concentrate on, and persist with simple routine or one- and two-step tasks.   In effect, the Commissioner contends that, while the ALJ did not specifically define the length and nature of Mr. Vallosia's required intervals, he found that they would not prevent Mr. Vallosia from performing work in an ordinary work setting on a regular and continuing basis.  (Defendant's Brief [doc. 19], at 7-8.)

8

The Commissioner's resolution of these two parts of the ALJ's decision could be correct, but it is not beyond question. It is not evident to the Court why the ALJ would have specifically defined a two-hour limit on Mr. Vallosia's ability to attend to, concentrate on, and persist with work tasks if he had believed that it would not have had a significant effect on the numbers of jobs available to him. It strikes the Court as more likely that the ALJ would not have defined any concentration, persistence, or pace criteria for Mr. Vallosia if they did not distinguish his capacity for sustained work from the norm.[2] It is also possible that the ALJ was unintentionally inconsistent. As Mr. Vallosia argues, there is no confidence that, whatever the ALJ's intention might have been, the vocational expert shared that intention.

Thus, the vagueness and ambiguity remain and render the ALJ's decision unsustainable. The Court concludes that a remand for clarification of the ALJ's decision is required and is not useless, but could lead to a different result. On remand, the ALJ must clarify the meaning of his defined two-hour concentration, persistence, or pace period, and, if necessary, define the nature and duration of the intervals between those

---

[2] The Court notes that another possibility is that the ALJ did not intend his defined two-hour concentration-persistence-or-pace period to be a maximum limit but a minimum capability; *i.e.*, it was a finding that Mr. Vallosia's mental impairments do not prevent him from performing the normal concentration requirement of sustained work. Because neither the Commissioner nor Mr. Vallosia argued this point, the Court was not briefed on whether light work requires the ability to concentrate for a continuous period of two hours before taking a break or whether there are indications in the record of a question whether Mr. Vallosia could maintain concentration or pace for the two hours required for light work. In the absence of an explanation along these lines, the Court cannot assume that this was the ALJ's intent.

9

periods.  The ALJ must also advise the vocational expert of his clarifications and inquire whether they change the vocational expert's opinions expressed at the hearing.  If so, then the ALJ must obtain the vocational expert's new opinion in an appropriate form and he must render a supplemental decision based on the revised opinion.

## Recommendation

This magistrate judge recommends that the Commissioner's denial of Mr. Vallosia's applications for disability benefits be **REVERSED** and **REMANDED** for reconsideration according to the instructions defined above.

## Notice regarding objections

Within fourteen days after being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. ' 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. ' 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to de novo determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger*

*v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

     **DONE this date:** 08/27/2015

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution to all ECF-registered counsel of record *via* ECF-generated e-mail.